# UNITED STATES DISTRICT COURT

# DISTRICT OF MINNESOTA

| | |
|---|---|
| Todd Harper, | Case No. _____ |
| Plaintiff, | **COMPLAINT** |
| v. | **AND** |
| | **JURY TRIAL DEMAND** |
| Transystems LLC, | |
| Defendant. | |

Plaintiff, for his Complaint against Defendant Transystems LLC, states and alleges as follows:

## PARTIES

1. Plaintiff Todd Harper is an adult male resident of Litchfield, Minnesota, within the District of Minnesota.

2. Defendant Transystems LLC is a foreign limited liability corporation with a home office address in Cheyenne, Wyoming.

## JURISDICTION AND VENUE

3. This is an action for violations under the Minnesota Whistleblower Act.

4. This Court has original jurisdiction of this action pursuant to 28 U.S.C. § 1332, because the matter in controversy exceeds $75,000.00, exclusive of interests and costs, and is between citizens of different states.

5. Venue is appropriate pursuant to 28 U.S.C. § 1391, because a substantial part of the events or omissions giving rise to this action occurred within the District of Minnesota.

**FACTS**

6. Todd Harper is a truck driver with 20 years of experience.

7. In 2011, Harper began working for Transystems as a seasonal truck driver. In this position, Harper hauled sugar beets from fields and pile sites to sugar mills in Renville, Minnesota, working from September through March every year for three years. In addition, Harper provided training to Transystems employees.

8. Harper was in his fourth season of employment when Transystems fired him. He had no prior disciplinary record.

*Harper Reports Transystems' Violations of Minnesota Vehicle Weight Laws*

9. During his employment with Transystems, Harper became concerned that Transystems was loading trucks beyond the maximum weight limits under Minnesota law. Under the gross weight schedule set forth in Minnesota Statutes section 169.824 subdivision 1, the maximum weight limit on a 7-axle vehicle with an agricultural product permit is 97,000 lbs. This weight limitation is increased to 99,000 during the winter weight increase season. Despite these regulations, Transystems was knowingly loading trucks to loads exceeding Minnesota vehicle weight limits.

10. Chuck Christians, the nightshift supervisor, complained to his employees that he could not see beets on top of the trucks as they passed his office. Harper

complained about overloading several times. Christians' response was that he did not care about the weight and that he wanted "to see beets on top of those trucks."

11.     It is common knowledge among Transystems employees that its management overloaded trucks during the nightshift in particular because the Department of Transportation does not patrol during nightshift hours.

12.     Overloaded trucks experience longer stopping distance and time, endangering the lives of the drivers and anyone else on the road. Truck drivers themselves risk tickets and fines from patrolling police and the Minnesota Department of Transportation (MnDOT). A citation goes on the driver's record, which jeopardizes the driver's future employment opportunities and can result in the driver losing his or her commercial driver's license (CDL). Furthermore, overweight trucks damage roads, endangering motorists and increasing road maintenance costs for taxpayers.

13.     On or about October 21, 2014, after Transystems management refused to change its policy on overloading, Harper reported Transystems to MnDOT. On October 23, 2014, Harper provided MnDOT with copies of scale tickets as evidence that Transystems was violating Minnesota's vehicle weight laws.

14.     On information and belief, based in part on Harper's reports, MnDOT set up traps in Minnesota to stop and inspect trucks for violations of Minnesota' overweight and other commercial vehicle laws and regulations.

15.     MnDOT has issued fines and tickets to Transystems's truckers and Transystems itself for violating Minnesota's vehicle weight limit laws.

*Harper Reports Transystems' Abuse of the H-2B Visa Program in Violation of Federal Laws and Regulations*

16.  Additionally, in August 2014, during Transystems' pre-hire meeting, it became evident that a large number of Transystems' nightshift workers were foreign-born. Transystems explained that the foreign workers were participants of the H-2B visa program.

17.  The domestic truckers were concerned about language barriers between drivers, because communication between truckers is critical to ensure safe driving conditions and efficient hauling. Transystems assured the domestic truckers that the foreign workers could converse in English. However, it quickly became clear to Harper that the foreign workers could *not* converse in English—much less to the extent required under federal law.

18.  Harper became concerned about Transystems' compliance with federal laws and regulations governing the H-2B visa program.  The H-2B program allows U.S. employers who meet specific regulatory requirements to bring foreign workers to the United States to fill temporary nonagricultural jobs.

19.  For a foreign worker to gain admission under the H-2B visa program, an employer must certify that there are no unemployed persons capable of performing the temporary or seasonal services or labor in the United States. 8 U.S.C. § 1101(a)(15)(H)(ii)(b); 8 C.F.R. 214.2(h),(i). The employer must also certify whether the alien's employment will adversely affect the wages and working conditions of United States workers. 8 C.F.R. 214.2(i)(F)(2)(iii),(iv). Knowingly obtaining H-2B visas through

4

the means of false statements and fraud is a violation of law. 18 U.S.C. § 1546(a). Violating section 1546(a) with the purpose of financial gain constitutes racketeering activity under the federal Racketeer Influenced and Corrupt Organizations (RICO) Act. 18 U.S.C. § 1961(1). And it is illegal for any employees or associates to conduct or participate in such a pattern of racketeering activity, or conspire to do so. 18 U.S.C. § 1962(c),(d).

20. On or about October 16, 2014, Harper had a meeting with Renville site manager Mike Rood. Harper reported his concerns that Transystems was systematically abusing the H-2B visa program. Harper reported that he suspected Transystems was hiring foreign workers to avoid paying the U.S. workers unemployment during the offseason. Rood did not deny that Transystems was abusing the H-2B visa program. Rood only said, "That's kind of hard to prove."

21. Harper also reported to Transystems that the foreign workers lacked sufficient proficiency with the English language. Harper told Transystems that permitting the foreign nationals to drive despite their deficient language skills was a violation of federal regulation. *See* 49 C.F.R. § 391.11. Harper even studied Spanish in a sincere effort to overcome the language barrier between him and his fellow employees. Harper's reports were ignored.

22. In addition to these reports to Transystems management, Harper also reported Transystems' known and suspected unlawful conduct to outside governmental bodies. On or around October 17, 2014 Harper called U.S. Representative Collin Peterson

of Minnesota's 7th congressional district. He reported Transystems' suspected abuses of the H-2B visa program.

23. On October 20, 2014, at around 4:00 p.m., Harper received a phone call from Mike Rood and Scott Lind, the COO of Transystems. The stated purpose of the call was to talk about Harper's concerns about the H-2B visa program. Rood and Lind called from a cell phone inside one of Transystems' trucks rather than from an office line.

24. During the October 20, 2014 conversation, Rood and Lind denied that they were violating any laws or regulations governing the H-2B visa program.

25. After Harper's reports to Representative Peterson's office and the October 20, 2014 phone call, Harper heard from other employees that Transystems management was grumbling about a particular nightshift worker "making political waves." On information and belief, Transystems' management concluded that Plaintiff made the reports to Representative Peterson's office.

26. On October 27, 2014, Transystems fired Harper. In its letter of termination, Transystems claimed that (1) the company "is committed to diversity in the workplace" and that "Todd is not supporting Transystems' direction"; (2) "Todd's complaints about the company's diverse workforce have a negative impact on morale"; and (3) "Todd's complaint that [foreign] workers interfere with the productivity of others has no basis in fact."

27. Transystems' stated reasons for Harper's termination are pretext. Transystems terminated Harper for reporting violations of state and federal laws and regulations.

## COUNT I:

## VIOLATIONS OF THE MINNESOTA WHISTLEBLOWER ACT

28. The Minnesota Whistleblower Act ("MWA") prohibits retaliation against employees for making good-faith reports of violations of law. Minn. Stat. § 181.932, Subd. 1 provides:

> An employer shall not discharge, discipline, threaten, otherwise discriminate against, or penalize an employee regarding the employee's compensation, terms, conditions, location, or privileges of employment because:
>
> (1) the employee …, in good faith, reports a violation, or suspected violation, or planned violation of any federal or state law or common law or rule adopted pursuant to law to an employer or to any governmental body or law enforcement official;
>
> (2) the employee is requested by a public body or office to participate in an investigation, hearing, inquiry;
>
> (3) the employee refuses an employer's order to perform an action that the employee has an objective basis in fact to believe violates any state or federal law or rule or regulation adopted pursuant to law, and the employee informs the employer that the order is being refused for that reason.

29. Plaintiff reported what he reasonably and in good faith believed to be violations of state and federal law as well as federal regulations made pursuant to law, to his employer and to government agencies.

30. The laws which Harper believed Defendant violated include, but are not limited to, Minn. Stat. § 169.80 (forbidding a person or the owner to cause or knowingly permit to be driven or moved a vehicle exceeding the allowable limits under law); Minn. Stat. § 169.871 subdiv. 1(a) (subjecting the owner or lessee of a vehicle operated with a

gross weight in excess of the allowable limits is subject to civil penalties.); Minn. Stat. § 169.871 subdiv. 1(b) (doubling civil penalties if a person is found to have knowingly and contemporaneously attempted to evade a fixed weigh station or to otherwise avoid weighing by means of stationary scales); 18 U.S.C. § 1546(a) (prohibiting the obtainment of visas through false means); 18 U.S.C. § 1961(1) (providing that violating section 1546(a) with the purpose of financial gain constitutes racketeering activity under the federal Racketeer Influenced and Corrupt Organizations (RICO) Act.); and 18 U.S.C. § 1962(c),(d) (making it illegal for any employees or associates to conduct or participate in such a pattern of racketeering activity, or conspire to do so).

31. Defendant retaliated against Plaintiff as a result of his reports by, among other things, terminating his employment.

32. The unlawful employment practices complained of above were intentional and were performed by Defendant with malice and/or with reckless indifference to the laws that protect Plaintiff.

33. As a direct and proximate result of Defendant's illegal conduct, Plaintiff has suffered damages and incurred attorneys' fees and expenses.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully prays:

a. That the practices of Defendant complained of herein be adjudged, decreed, and declared to be a violation of the rights secured to Plaintiff by state, federal, and common law;

b.   That Defendant be enjoined from engaging in the unlawful practices complained of above;

c.   That Defendant be required to make Plaintiff whole for its adverse, unlawful, and discriminatory actions through restitution in the form of back pay and the monetary value of any employment benefits he was entitled to as an employee of Defendant, with interest;

d.   That Plaintiff be awarded compensatory damages in excess of $50,000.00, in an amount to be determined according to the proof set forth at trial;

e.   That the Court award Plaintiff his attorneys' fees, costs, and disbursements pursuant to statute;

f.   That the Court order the expungement of any adverse records of Plaintiff on file with Defendant;

g.   That the Court grant such other and further relief as it deems fair and equitable.

**PLAINTIFF DEMANDS A TRIAL BY JURY.**

**HALUNEN LAW**

Dated: March 26, 2015

s/Barbara J. Felt
Barbara J. Felt, #228564
Stephen M. Premo, #393346
1650 IDS Center
80 South Eighth Street
Minneapolis, MN 55402
Telephone: (612) 605-4098
Facsimile: (612) 605-4099

*ATTORNEYS FOR PLAINTIFF*